## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

KATHERINE EBAN,

     *Plaintiff*,

     v.

U.S. DEPARTMENT OF DEFENSE, *et al.*,

     *Defendants*.

</td><td>

Civil Action No. 23 - 2516 (LLA)

</td></tr>
</table>

## <u>MEMORANDUM OPINION AND ORDER</u>

The matter is before the court on a motion for summary judgment filed by Defendants, the U.S. Department of Defense and the U.S. Army, ECF No. 25, and a cross-motion for summary judgment filed by Plaintiff Katherine Eban, ECF No. 29. Ms. Eban seeks records about "Operation Whitecoat," a biodefense medical research study conducted by the Army between 1954 and 1973. ECF No. 1 ¶ 1. Ms. Eban claims that Defendants violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by failing to conduct a reasonable search for responsive records. *Id.* ¶¶ 28-32. Upon consideration of the motions and supporting documentation, the court will grant in part and deny in part Defendants' motion for summary judgment, deny in part and hold in abeyance in part Ms. Eban's cross-motion for summary judgment, and stay the case pending the parties' status report concerning future proceedings.

## I.    FACTUAL BACKGROUND

The following facts are undisputed. Ms. Eban is an investigative journalist and a Contributing Editor at *Vanity Fair*. ECF No. 1 ¶ 2. She seeks records from Defendants about "Operation Whitecoat," an Army biomedical research program that took place between 1954 and

1973 in Fort Detrick, Maryland, in which the "military administered the plague, and other dangerous biological agents, to thousands of Seventh Day Adventists—draftees whose religious convictions forbade combat."  ECF No. 29-2 ¶¶ 1-2; ECF No. 32-1 ¶¶ 1-2; *see* ECF No. 25-2 ¶ 1; ECF No. 29-3 ¶ 1.

On December 28, 2022, Ms. Eban submitted a FOIA request to the Army's central FOIA office for records relating to Operation Whitecoat.  ECF No. 25-2 ¶¶ 1-2; ECF No. 29-2 ¶ 8; ECF No. 29-3 ¶ 1-2; ECF No. 32-1 ¶ 8.  For the time period between January 1, 1952 and December 31, 1976, she sought:

1. Any and all records on collaborative projects between the Department of Defense and the Seventh Day Adventist Church. These records should include but are not limited to, letters, telegrams, meeting memos, meeting minutes, agreements/contracts, and transcriptions or recordings of any conversations or phone calls.

2. Any and all records of communications exchanged between military officials and Seventh Day Adventist church officials. The military officials should include but are not limited to: George E. Armstrong, US Army surgeon general; Lieutenant Colonel William D. Tigert of Walter Reed Medical Center; Phillip R. Pittman, Former Chief, Division of Medicine, USAMRIID, Fort Detrick, MD.  The Seventh Day Adventist officials should include but are not limited to: Dr. Frank Damazo, Operation Whitecoat liaison between the Army and the church; Theodore R. Flaiz, secretary of the medical department of the General Conference; Elder G.W. Chambers, secretary of the War Service Commission of the Seventh Day Adventist General Conference.  These records of communications should include but are not limited to, letters, telegrams, meeting memos, meeting minutes, agreements, contracts, transcriptions, or recordings of any conversations or phone calls.

3. Any and all records pertaining to Operation Whitecoat's protocols to recruit, evaluate and select the Seventh Day Adventist volunteers, or any other volunteers, participating in the program.  These records should include but are not limited to, lists of participants, medical records, agreements/contracts,

meeting minutes, meeting memos, consent forms, waivers, and experiment protocols.

4. Any and all records pertaining to Operation Whitecoat's operations, experiments, and treatment offered to participants. These records should include but are not limited to the medical resources provided to participants, physical evaluations, psychological evaluations, and religious counseling.

5. Any and all records related to financial compensation, funding, donations, contributions, other payments, or other benefits made or received by the Department of Defense or any of its officials to or from [t]he Seventh Day Adventist church or any of its officials. The military officials should include but are not limited to: George E. Armstrong, US Army surgeon general and Lieutenant Colonel William D. Tigert of Walter Reed Medical Center. The Seventh Day Adventist officials should include but are not limited to: Dr. Frank Damazo, Operation Whitecoat liaison between the army and the church; Theodore R. Flaiz, secretary of the medical department of the General Conference; Elder G.W. Chambers, secretary of the War Service Commission of the Seventh Day Adventist General Conference. These records should include but are not limited to financial statements, letters, memos, telegrams, reports, receipts, meeting minutes, transcriptions, or recordings of any conversations or phone calls.

ECF No. 1-1, at 1-2.[1]  For the time period between January 1, 1976 and the date of the search for responsive records, she sought:

1. Any and all records pertaining to communications between the Department of Defense and surgeon Dr. Frank Damazo. These records may include but are not limited to: financial statements, payments, letters, memos, telegrams, reports, agreements/contracts, salary compensation, transcriptions, or recordings of any conversations and phone calls.

*Id.* at 2.

---

[1] When citing ECF Nos. 1-1, 25-4, 25-6, 25-7, 25-8, 29-4, 32-2, and 32-3, the court uses the page numbers generated by CM/ECF, rather than each document's internal pagination.

In January 2023, Ms. Eban contacted the Army to inquire about the status of her FOIA request. *Id.* at 9; *see* ECF No. 25-2 ¶ 3 (Defendants describing Ms. Eban's email as a resubmission of her FOIA request); ECF No. 29-3 ¶ 3 (Ms. Eban describing the email as a status inquiry). A week later, the U.S. Army Center of Military History notified Ms. Eban that it did not have any responsive records. ECF No. 1-1, at 12-14; *see* ECF No. 25-2 ¶ 4; ECF No. 29-3 ¶ 4. The center recommended that she contact the National Archives and Records Administration ("NARA") and provided the contact information for three historians or librarians affiliated with the Army. ECF No. 1-1, at 13; *see* ECF No. 25-2 ¶ 4; ECF No. 29-3 ¶ 4.

Ms. Eban then submitted an identical FOIA request to NARA. ECF No. 1-1, at 18-20; *see* ECF No. 1 ¶ 14. In February 2023, NARA informed her that it did not locate any responsive records. ECF No. 1-1, at 16-18; *see* ECF No. 25-2 ¶ 5; ECF No. 29-3 ¶ 5. NARA explained that "[r]elevant records still may be in the custody of the Army," and it provided three reference numbers for files that "possibly includ[e] records on Operation Whitecoat." ECF No. 1-1, at 17. Ms. Eban forwarded this information to the Army's central FOIA office. *Id.* at 16-20.

In March 2023, the Army's central FOIA office responded to Ms. Eban and explained that the reference numbers she had provided were "under the purview of U.S[.] Army Medical Research [Institute] of Infectious Diseases [("USAMRIID")]." *Id.* at 15. The office further advised that "for a quicker response, . . . requesters [should] go directly to the specific FOIA office that may have responsive records" and shared the contact information for the Army's Medical Command Requester Service Center. *Id.*; *see* ECF No. 25-2 ¶ 6; ECF No. 29-3 ¶ 6. In June, the office notified Ms. Eban that her FOIA request was still in the processing queue. ECF No. 1-1, at 29; *see* ECF No. 25-2 ¶ 7; ECF No. 29-3 ¶ 7.

As a result of Ms. Eban's FOIA request, the U.S. Army Medical Research and Development Command ("USAMRDC") identified two subordinate commands with potentially responsive records: Walter Reed Army Institute of Research ("WRAIR") and USAMRIID. ECF No. 25-4, at 3-4 ¶¶ 8-9; *see* ECF No. 25-2 ¶ 8; ECF No. 29-3 ¶ 8. Beginning in September 2023, WRAIR and USAMRIID conducted electronic searches for responsive records and released records on a rolling basis. ECF No. 25-4, at 4-5 ¶¶ 10-12; *see* ECF No. 25-2 ¶ 9; ECF No. 29-3 ¶ 9; ECF No. 29-2 ¶ 9; ECF No. 32-1 ¶ 9. WRAIR's and USAMRIID's searches yielded approximately 86,000 pages of potentially responsive records. ECF No. 25-4, at 4 ¶ 11; *see* ECF No. 25-2 ¶ 12; ECF No. 29-3 ¶ 12. The Army did not conduct searches for physical records at WRAIR and USAMRIID because it determined that "all hard copies of records from Operation Whitecoat were scanned to digital format prior to archiving at" NARA. ECF No. 25-4, at 4 ¶ 10; *see* ECF No. 29-2 ¶ 10; ECF No. 32-1 ¶ 10. The electronic search terms the Army used included "Seventh Day Adventist," "Operation Whitecoat," "Operation White Coat," and "Tigert." ECF No. 25-4, at 4-5 ¶¶ 11-12; *see* ECF No. 25-2 ¶ 10; ECF No. 29-3 ¶ 10. USAMRIID also identified the 147 protocols used in Operation Whitecoat and located responsive records by searching documents related to each protocol. ECF No. 32-2, at 4-5 ¶¶ 2-3.

Before releasing the responsive records, Defendants withheld information regarding individual medical records and medical patient information under FOIA Exemption 6 and withheld information concerning dangerous biological agents and toxins, which are prohibited from disclosure pursuant to 42 U.S.C. § 262a(h), under FOIA Exemption 3. ECF No. 25-4, at 5-8 ¶¶ 14-15, 21-22; *see* ECF No. 25-2 ¶¶ 15, 17; ECF No. 29-3 ¶¶ 15, 17.

In February 2024, Ms. Eban requested that Defendants narrow the scope of the search to ten years, from 1952 to 1962. ECF No. 25-4, at 6 ¶ 16; *see* ECF No. 25-2 ¶ 21; ECF No. 29-3

¶ 21.  She also submitted a supplemental request for the records of Colonel Tigertt, who led Operation Whitecoat at its genesis, in the "Office of Army Surgeon General, Army Chemical Corps, Army Medical Service Graduate School . . . , Walter Reed Army Medical Center . . . , US Army Medical R&D Command, [and] Walter Reed Army Institute of Research (WRAIR)."  ECF No. 25-4, at 6 ¶ 17; *see id.* at 4 ¶ 11.  Ms. Eban used the correct spelling of Colonel Tigertt's name for the first time in her supplemental request.  *Compare* ECF No. 1-1, at 1, 19 (using "Tigert"), *and id.* at 18 (using "Tiggett"), *with* ECF No. 25-4, at 6 ¶ 17 (using "Tigertt").  USAMRDC forwarded the supplemental request to the respective commands and informed Ms. Eban in March that the Army Medical Service Graduate School had become WRAIR in 1954.  ECF No. 25-4, at 6-7 ¶¶ 18-20.

Over the summer, Walter Reed National Military Medical Center ("Walter Reed Medical Center") conducted an electronic search for records responsive to Ms. Eban's supplemental request, ECF No. 25-5 ¶¶ 3-14; *see* ECF No. 25-2 ¶ 23; ECF No. 29-3 ¶ 23, including by searching for the terms "Tigertt" and "Tig" to account for misspellings, ECF No. 25-5 ¶ 12.  The search proved unfruitful.  ECF No. 25-5 ¶¶ 12-13.  The center did not conduct a physical search for records because it determined that all physical records from the time span in Ms. Eban's request had either been transferred to NARA or to other installations pursuant to Army realignments.  *Id.* ¶ 3; ECF No. 32-1 ¶ 15.

The Combat Capabilities Development Command ("DEVCOM") conducted electronic and physical searches, which also failed to turn up responsive records.  ECF No. 25-6, at 1-4 ¶¶ 1-13; *see* ECF No. 25-2 ¶¶ 24-25; ECF No. 29-3 ¶¶ 24-25.  DEVCOM searched the following terms: "WhiteCoat," "Operation White Coat," "William D. Tigertt," "W.D. Tigertt," "Colonel W.D.

Tigertt," and several variations thereof.  ECF No. 25-6, at 3-4 ¶ 8; *see* ECF No. 25-2 ¶ 24; ECF No. 29-3 ¶ 24.

Similarly, the Army Chemical, Biological, Radiological, and Nuclear School conducted electronic and physical searches for responsive records but was unable to uncover responsive records.  ECF No. 25-7, at 1-2 ¶¶ 1-3; *see* ECF No. 25-2 ¶¶ 26-27; ECF No. 29-3 ¶¶ 26-27.  Finally, the Army Medical Command conducted an electronic search of its seventy-seven organizational folders, which yielded no responsive records.  ECF No. 25-8, at 1-2 ¶¶ 5-6, 3-7; *see* ECF No. 25-2 ¶¶ 28-29; ECF No. 29-3 ¶¶ 28-29.

In August 2024, Ms. Eban's colleague, Patrick Conway, visited the Gorgas Memorial Library within WRAIR.  ECF No. 29-4, at 1 ¶¶ 4-5; *see* ECF No. 29-2 ¶ 11; ECF No. 32-1 ¶ 11.  Mr. Conway located dozens of physical records mentioning Colonel Tigertt that had not been produced in response to Ms. Eban's FOIA request.  ECF No. 29-4, at 1 ¶¶ 5-6; *see* ECF No. 29-2 ¶ 11; ECF No. 32-1 ¶ 11.

In January 2025, USAMRDC conducted an additional electronic search using the term "Tigertt" to "alleviate [Ms. Eban's] concerns regarding the misspelling of [Colonel] Tigertt's name" in the initial searches.  ECF No. 32-2, at 3 ¶ 8.  No additional records were found.  *Id.*

## II.    PROCEDURAL HISTORY

Ms. Eban filed this action in August 2023, ECF No. 1, and it was directly reassigned to the undersigned in December 2023, Dec. 14, 2023 Docket Entry.  In her complaint, Ms. Eban alleged that Defendants had violated FOIA by failing to conduct a reasonable search for responsive records, to timely respond to her request, and to produce all non-exempt records, ECF No. 1 ¶¶ 28-34, and she sought declaratory, injunctive, and mandamus relief, as well as fees and costs, *id.* at 7.  The parties met and conferred about Ms. Eban's FOIA request six times to narrow the

scope of the case before proceeding to summary judgment.  ECF Nos. 14 to 17, 19, 20 (status reports); ECF Nos. 25, 29, 30, 32 to 35 (summary judgment briefing).  At this stage of the litigation, the only issue before the court is whether Defendants conducted an adequate search for records that are responsive to Ms. Eban's FOIA request.  *See* ECF No. 29-1, at 3-7; ECF No. 32, at 1-2.

### III.    LEGAL STANDARDS

The purpose of FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *Am. C.L. Union v. U.S. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).  "[T]he vast majority of FOIA cases can be resolved on summary judgment."  *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).  A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

To prevail on a motion for summary judgment about the adequacy of a search, "the agency must demonstrate that it has conducted a 'search reasonably calculated to uncover all relevant documents.'"  *Steinberg v. U.S. Dep't of Just.*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  "The adequacy of a search is 'determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.'"  *Kowal v. U.S. Dep't of Just.*, 107 F.4th 1018, 1027 (D.C. Cir. 2024) (quoting *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011)).  A court may grant summary judgment "on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith."  *Jud. Watch,*

*Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006)).  Agency affidavits must "set[] forth the search terms and the type of search performed[] and aver[] that all files likely to contain responsive materials . . . were searched." *Reps. Comm. for Freedom of Press v. Fed. Bureau of Investigation*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

"[O]nce the agency has provided a 'reasonably detailed' affidavit describing its search, the burden shifts to the FOIA requester to produce 'countervailing evidence' suggesting that a genuine dispute of material fact exists as to the adequacy of the search." *Pinson v. U.S. Dep't of Just.*, 189 F. Supp. 3d 137, 149 (D.D.C. 2016) (quoting *Morley v. Cent. Intel. Agency*, 508 F.3d 1108, 1116 (D.C. Cir. 2007)).  Such countervailing evidence may include "problems with . . . the specific search terms used or the inadequacy of the particular locations searched." *Heartland All. for Hum. Needs & Hum. Rts. v. U.S. Immigr. & Customs Enf't*, 406 F. Supp. 3d 90, 117 (D.D.C. 2019).  However, because an agency's affidavits or declarations "are accorded a presumption of good faith, [they] cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Cent. Intel. Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).  If "a review of the record raises substantial doubt, particularly in view of 'well[-]defined requests and positive indications of overlooked materials,' summary judgment is inappropriate." *Lamb v. Millennium Challenge Corp.*, 334 F. Supp. 3d 204, 211 (D.D.C. 2018) (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)).

## IV.    DISCUSSION

As noted, the only remaining dispute between the parties concerns the adequacy of Defendants' search for responsive records.  *See* ECF No. 29-1, at 3-7; ECF No. 32, at 1-2.  In support of their motion for summary judgment, Defendants submit thirteen declarations, affidavits, and statements, three records search certifications, and a *Vaughn* index.  *See* ECF No. 25-4, at 1-8 (Larcom Decl.), 10-15 (*Vaughn* index); ECF No. 25-5 (Spicer Aff.); ECF No. 25-6, at 1-5 (Knapp Decl.), 6-7 (Foppiano Records Search Certification), 8-9 (Wiltison Records Search Certification), 10-11 (Stein Records Search Certification); ECF No. 25-7, at 1-2 (Lindberg Decl.), 3 (Lindberg Aff.); ECF No. 25-8, at 1-2 (Koenig Aff.), 3 (Carolin-Godbolt Statement), 4 (Spidell Statement); ECF No. 32-2, at 1-3 (Suppl. Larcom Decl.), 4-5 (Pitt Decl.); ECF No. 32-3, at 1-3 (George Decl.); ECF No. 32-4 (Suppl. Koenig Decl.); ECF No. 32-5 (Suppl. Lindberg Decl.).  Ms. Eban contends that the search was deficient in three ways: (1) the Army should have searched for electronic records throughout USAMRIID instead of limiting its search to USAMRIID's Medical Division, ECF No. 34, at 1-4; (2) the Army should have searched for records at USAMRIID using the proper spelling of Lieutenant Colonel William D. Tigertt's name ("Tigertt" instead of "Tigert," as Ms. Eban had originally spelled it in her FOIA request), ECF No. 29-1, at 5-7; ECF No. 34, at 7-8; and (3) the Army should have conducted searches for physical records at WRAIR, USAMRIID, the Army Medical Command, and Walter Reed Medical Center, ECF No. 29-1, at 3-4; ECF No. 34, at 4-7.  While Ms. Eban does not challenge Defendants' search for electronic records at WRAIR, *see generally* ECF Nos. 29-1, 34, Defendants are entitled to summary judgment only if they have demonstrated the adequacy of their search at that location with "reasonable specificity of detail" that is not "called into question by contradictory evidence in the record or by evidence

of agency bad faith." *Jud. Watch, Inc.*, 726 F.3d at 215 (quoting *Consumer Fed'n of Am.*, 455 F.3d at 287).

For the reasons explained below, the court concludes that Defendants have not met their burden to establish the adequacy of the search for electronic records at WRAIR and USAMRIID, but that Defendants are entitled to summary judgment concerning any physical records at WRAIR, USAMRIID, the Army Medical Command, and Walter Reed Medical Center. Accordingly, the court will grant Defendant's motion in part and deny it in part, and it will stay the case to permit Defendants to supplement their declarations to provide a clearer description of the Army's searches for electronic records at WRAIR and USAMRIID. If Defendants do not return with sufficient declarations, the court will grant summary judgment to Ms. Eban as it concerns the Army's searches for electronic records at WRAIR and USAMRIID.

### A.    Searches for Electronic Records at WRAIR and USAMRIID

In support of the adequacy of their searches for electronic records at WRAIR and USAMRIID, Defendants present the declarations of USAMRDC FOIA Officer Carl T. Larcom and Dr. Margaret Pitt, a senior scientist at USAMRIID and the FOIA Program Alternate Coordinator. ECF No. 25-4, at 1-8; ECF No. 32-2, at 1-5. Mr. Larcom asserts that the Army searched "[a]ll electronic drives at USAMRIID and WRAIR," yielding approximately 86,000 potentially responsive pages, and that the search terms "Seventh Day Adventist," "Operation Whitecoat," and "Operation White Coat" were used. ECF No. 25-4, at 4 ¶ 10-11. Mr. Larcom also avers that he conducted a search of "[a]ll electronic drives at WRAIR"—first for the search term "Tigert" and then for the correctly spelled "Tigertt." ECF No. 25-4, at 4-5 ¶ 12; ECF No. 32-2, at 3 ¶ 8. In her declaration, Dr. Pitt states that she "caused a search of USAMRIID for all records pertaining to Operation Whitecoat" and that the Medical Division was "the most likely

place for any responsive records because the historic records of clinical studies (which includes Operation Whitecoat) were maintained and stored in the Medical Division." ECF No. 32-2, at 4 ¶ 2.

While an agency's affidavits are accorded a presumption of good faith, *see SafeCard Servs., Inc.*, 926 F.2d at 1200, Mr. Larcom's supplemental declaration and Dr. Pitt's declaration raise significant doubts about the veracity of Mr. Larcom's statement that "[a]ll electronic drives at USAMRIID and WRAIR" were searched for relevant terms, ECF No. 25-4, at 4 ¶ 10. Specifically, the Army has not demonstrated that the Medical Division was the only location within USAMRIID that was likely to produce responsive records, and the search terms used at WRAIR were not "reasonably calculated to uncover all relevant documents." *Steinberg*, 23 F.3d at 551 (quoting *Weisberg*, 745 F.2d at 1485). Accordingly, the court will deny summary judgment to Defendants with respect to the searches for electronic records at WRAIR and USAMRIID, but it will permit Defendants to supplement their declarations to provide the court with more detail about those searches. *See Leopold v. Dep't of Def.*, 752 F. Supp. 3d 66, 92 (D.D.C. 2024) (denying cross-motions for summary judgment and inviting further declarations from the agency as to the adequacy of its search); *Judicial Watch, Inc. v. U.S. Dep't of Just.*, 185 F. Supp. 2d 54, 65 (D.D.C. 2002) ("[W]hen an agency's affidavits or declarations are deficient regarding the adequacy of its search, . . . courts generally will request that the agency supplement its supporting declarations.").

### 1.    WRAIR

As noted, Ms. Eban does not challenge the search for electronic records at WRAIR, but to prevail on summary judgment, Defendants must demonstrate that they have "conducted a 'search reasonably calculated to uncover all relevant documents.'" *Steinberg*, 23 F.3d at 551 (quoting

*Weisberg*, 745 F.2d at 1485).  Defendants have not satisfied this burden as it pertains to their searches for electronic records at WRAIR.

Defendants' supplemental declarations describing the search at USAMRIID undercut Mr. Larcom's statement in his first declaration that the Army conducted searches for "Seventh Day Adventist," "Operation Whitecoat," and "Operation White Coat" at both WRAIR and USAMRIID.  ECF No. 25-4, at 4 ¶¶ 10-11.  In his first declaration, Mr. Larcom asserts that searches of both commands yielded approximately 86,000 potentially responsive pages.  *Id.*  However, this is the same number of pages that he reports Dr. Pitt yielded from her search of USAMRIID alone.  ECF No. 32-2, at 2 ¶ 4.  Mr. Larcom does not state that the electronic searches at WRAIR yielded no responsive records or that the records were wholly duplicative of those found within USAMRIID, making it difficult for the court to reconcile his declarations with Dr. Pitt's.

Additionally, Mr. Larcom's own searches of WRAIR are not enough to establish an adequate search because Mr. Larcom states that he searched only for "Tigert" and "Tigertt."  ECF No. 25-4, at 4-5 ¶ 12; ECF No. 32-2, at 3 ¶ 8.  His declarations do not refer to any other key search terms, such as "Operation Whitecoat," rendering his searches for electronic records at WRAIR alone plainly inadequate.  *See Am. Wild Horse Campaign v. U.S. Bureau of Land Mgmt.*, No. 22-CV-2971, 2025 WL 1148361, at *12 (D.D.C. Apr. 17, 2025) ("'Search terms' must be 'reasonably calculated to turn up the records [the FOIA requester] sought.'" (alteration in original) (quoting *Reps. Comm. for Freedom of Press*, 877 F.3d at 405)).  Accordingly, without more, the court cannot grant summary judgment to Defendants on the adequacy of the search for electronic records at WRAIR.

### 2.    Searching all electronic records at USAMRIID

Ms. Eban argues that the USAMRIID search was inadequate because the Army searched for responsive records only within USAMRIID's Medical Division as opposed to across the entire entity.  ECF No. 34, at 1-4.  Ms. Eban dismisses Mr. Larcom's declaration asserting that "[a]ll electronic drives at USAMRIID" were searched, ECF No. 25-4, at 4 ¶ 10, since he "does not claim to be located at USAMRIID or to have conducted the search," ECF No. 34, at 2.  Ms. Eban asserts that Mr. Larcom learned about the USAMRIID search from Dr. Pitt.  ECF No. 34, at 2 & n.2; *see* ECF No. 32-2, at 2 ¶¶ 4-5.  Ms. Eban thus relies on Dr. Pitt's representation in her declaration that Dr. Pitt "determined that the Medical Division would be the most likely place for any responsive records," ECF No. 32-2, at 4 ¶ 2, to assert that "USAMRIID *limited* its search to its Medical Division," ECF No. 34, at 2 (emphasis added).  Searching "the most likely place for any responsive records," Ms. Eban insists, ECF No. 34, at 3 (quoting ECF No. 32-2, at 4 ¶ 2), fails to satisfy FOIA's requirement that the agency show that "no other record system was likely to produce responsive documents," *id.* (quoting *Oglesby*, 920 F.2d at 68); *see Shteynlyuger v. Ctrs. for Medicare & Medicaid Servs.*, 698 F. Supp. 3d 82, 114 (D.D.C. 2023) ("[T]he question is not whether the agency searched the *most likely* places to maintain responsive records; the question is whether the agency searched *all* places where records were reasonably likely to be found.").  The court agrees.

Although an agency "need not 'search every record system'" to satisfy its burden of conducting an adequate search, "it also may not 'limit its search to only one record system if there are others that are likely to turn up the information requested.'"  *Montgomery v. Internal Revenue Serv.*, 40 F.4th 702, 714 (D.C. Cir. 2022) (quoting *Oglesby*, 920 F.2d at 68); *see Leopold*, 752 F. Supp. 3d at 82-83.  While "[m]ere speculation that additional documents *might* be found in another

[location]" is not sufficient to render an agency's search inadequate, *Nolen v. Dep't of Just.*, 146 F. Supp. 3d 89, 97 (D.D.C. 2015), Ms. Eban has raised a "substantial doubt," *DiBacco v. U.S. Army*, 795 F.3d 178, 191 (D.C. Cir. 2015) (quoting *Valencia-Lucena*, 180 F.3d at 326), that the Medical Division was the only location within USAMRIID likely to maintain records responsive to her request.

Dr. Pitt explains in her declaration that the Medical Division was "the most likely place for any responsive records because the historic records of clinical studies (which includes Operation Whitecoat) were maintained and stored in the Medical Division." ECF No. 32-2, at 4 ¶ 2. However, neither Dr. Pitt nor Mr. Larcom submits "good-faith averments that the [Medical Division] was not just the 'most likely' location that would maintain records responsive to plaintiff's request, but that it was the '*only*' location." *Am. Wild Horse Campaign*, 2025 WL 1148361, at *8 (emphasis added). Without an explanation of why other divisions at USAMRIID were unlikely to possess relevant records—or even an explanation of what those other divisions are—the court cannot conclude that Defendants have satisfied their burden as to the adequacy of their search at USAMRIID.

### 3.    Searching for "Tigertt" at USAMRIID

Ms. Eban also contends that the search for electronic records at USAMRIID is deficient because the Army searched for the term "Tigert," instead of "Tigertt." ECF No. 34, at 7-8. Ms. Eban thus argues that USAMRIID should have conducted a search using a root expander. ECF No. 29-1, at 5-7. Defendants argue that the misspelling of "Tigert" would still capture the intended term "Tigertt." ECF No. 29-1, at 5-7; ECF No. 32, at 6; ECF No. 32-2, at 2-3 ¶ 7. As support, they point to Mr. Larcom's and Dr. Pitt's declarations, in which the declarants explain that "the catalog, indices, and archives relevant to the records at issue are lists and spreadsheets

created in Microsoft Word and Excel." ECF No. 32, at 6. A simple search using either of these applications, according to Defendants, "would result in all instances of 'Tigert' regardless of additional letters, spaces, or special characters on either end of the search term.'" ECF No. 32-2, at 2-3 ¶ 7. Defendants also contend that searching "Tigertt" instead of "Tigert" would fail to capture responsive records that misspelled his name, as Ms. Eban did. *See* ECF No. 32-2, at 2-3 ¶ 7. The court agrees with Ms. Eban.

Defendants' explanation of the "lists and spreadsheets created in Microsoft Word and Excel" is wholly unrelated to the search at USAMRIID. That is because those "lists and spreadsheets" pertain only to the records at Gorgas Memorial Library, which is housed under WRAIR, not USAMRIID. *See* ECF No. 32-2, at 2-3 ¶ 7. Defendants fail to otherwise respond to Ms. Eban's contentions regarding the need for a root expander for the search at USAMRIID. While Defendants' declarations regarding the indexing of their record systems may be accorded a presumption of good faith, Defendants here provide no description of how the record system at USAMRIID is indexed. *See generally* ECF No. 32.

Defendants assert that, in any event, Mr. Larcom conducted an additional search in January 2025 using the term "Tigertt" to "alleviate [Ms. Eban's] concerns regarding the misspelling of [Colonel] Tigertt's name." ECF No. 32-2, at 3 ¶ 8; *see* ECF No. 32, at 6. However, this explanation, too, applies only to WRAIR. ECF No. 32-2, at 3 ¶ 8 ("All electronic drives at WRAIR were searched."). Mr. Larcom's declarations therefore do not meaningfully respond to Ms. Eban's argument that a search for "Tigert" in USAMRIID's files would not have located all records referencing "Tigertt."

Accordingly, Defendants' declarations leave the court unsure whether the Army conducted an adequate search of USAMRIID records. The court recognizes that Ms. Eban herself misspelled

Colonel Tigertt's name in her initial FOIA request.  ECF No. 1-1, at 1; ECF No. 25-2 ¶ 2; ECF No. 29-3 ¶ 2.  However, her supplemental request used the correct spelling, ECF No. 25-4, at 6 ¶ 17, and most of the Army's searches of other units also used the correct spelling, ECF No. 25-5, at 4 ¶ 12; ECF No. 25-6, at 3-4 ¶ 8, 11; ECF No. 25-7, at 3; ECF No. 25-8, at 1 ¶ 5, 5; *see* ECF No. 25-1, at 9 n.1 ("Though Plaintiff's FOIA request specified the spelling 'Tigert' . . . , Plaintiff later requested searches of other spelling variations of the name, before concluding that 'Tigertt' was the correct spelling variation.").  "If [Defendants] nonetheless conducted [the] search [at USAMRIID] using only the wrong spelling, the search was inadequate."  *Kleinert v. Bureau of Land Mgmt.*, 132 F. Supp. 3d 79, 87 (D.D.C. 2015); *see Int'l Couns. Bureau v. U.S. Dep't of Def.*, 864 F. Supp. 2d 101, 107-09 (D.D.C. 2012) (denying summary judgment to an agency where it failed to conduct a search using an alternate spelling of a detainee's name); *cf. Helmer v. U.S. Dep't of State*, No. 19-CV-1744, 2025 WL 238919, at *4 (D.D.C. Jan. 17, 2025) (finding that an agency ran adequate supplemental searches to capture "inadvertent misspellings").

In sum, because Defendants have not offered a satisfactory response to Ms. Eban's argument that they should have searched for "Tigertt" at USAMRIID, summary judgment for Defendants is not appropriate.

### B.    Search for Physical Records

Ms. Eban argues that Defendants' search for responsive records was inadequate because the Army failed to search for physical records at WRAIR, USAMRIID, the Army Medical Command, and Walter Reed Medical Center.  ECF No. 29-1, at 3-4; ECF No. 34, at 4-7.  The court disagrees.

### 1.    WRAIR and USAMRIID

Ms. Eban contends that the search at WRAIR and USAMRIID was "defective" because the Army searched only electronic records, and not physical records.  ECF No. 29-1, at 4.  As support, Ms. Eban presents the declaration of Mr. Conway, a documentary filmmaker who works with her.  ECF No. 29-4, at 1 ¶ 4.  Mr. Conway states that he located several physical records "relevant to Operation Whitecoat" at the Gorgas Memorial Library, inside WRAIR, including "at least 31 pages mentioning Colonel William Tigertt."  *Id.* at 1 ¶ 5.  Mr. Conway explains that, having reviewed the Army's production to Ms. Eban, the pages from Gorgas Memorial Library were not included.  *Id.* at 1 ¶ 6.  Ms. Eban maintains that the documents should have been included in the Army's production because of their plain reference to Operation Whitecoat.  ECF No. 34, at 4-6.  For example, one of the library documents mentions a meeting in which Colonel Tigertt reported progress on the "CD-22 study," and another references a "correspondence series concerning Seventh Day Adventists."  *Id.* at 5 (quoting ECF No. 30-3, at 4, 35).  Ms. Eban, citing to an online military publication, contends that the CD-22 study was the first study to be conducted under Operation Whitecoat.  *Id.*  Ms. Eban reasons that these records are "'positive indications of overlooked material'" and prove that "at least some responsive records remain in the Army's possession only in hard-copy form."  ECF No. 29-1, at 4 (quoting *Am. Oversight v. U.S. Dep't of Health & Hum. Servs.*, 101 F.4th 909, 923 (D.C. Cir. 2024)).

Not so.  Contrary to Ms. Eban's claim, the physical records referencing Colonel Tigertt in Gorgas Memorial Library do not constitute "positive indications of overlooked material," *Am. Oversight*, 101 F.4th at 923 (quoting *Valencia-Lucena*, 180 F.3d at 325), because the agency could have reasonably concluded that they were not responsive to Ms. Eban's FOIA request.  As Defendants point out, the library records located by Mr. Conway may mention Colonel Tigertt,

but they are not clearly responsive to Ms. Eban's request for records pertaining to projects involving the Seventh Day Adventist Church or Operation Whitecoat.  ECF No. 33, at 3-4; *see* ECF No. 1-1, at 1-2.

Most of the 31 pages Mr. Conway uncovered contain correspondence that merely mentions Colonel Tigertt but does not refer to any key words in Ms. Eban's FOIA request.  *See* ECF No. 29-4, at 3-35.[2]  The document referring to Colonel Tigertt's updates on the "CD-22 study," for example, mentions "participating church groups" but does not specify the Seventh Day Adventist Church.  *See id.* at 4.  While Ms. Eban contends that these documents "plainly pertain to Operation Whitecoat" because the CD-22 study was part of Operation Whitecoat, Ms. Eban must rely on external information to reach that conclusion.  ECF No. 34, at 5.  However, an agency is not "obliged to look beyond the four corners of the [FOIA] request for leads to the location of responsive documents."  *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 389 (D.C. Cir. 1996) ("[I]t will be the rare case indeed in which an agency record contains a lead so apparent that the [agency] cannot in good faith fail to pursue it.").  Moreover, the single document Mr. Conway found that does mention "Seventh Day Adventists" refers to a "1955 correspondence series concerning Seventh Day Adventists."  ECF No. 29-4, at 35.  Colonel Tigertt is mentioned in a different section of the document for a seemingly unrelated purpose.  *See id.*  This document therefore does not fall under the plain terms of Ms. Eban's FOIA request.  *See Wilson v. U.S. Dep't of Transp.*, 730 F. Supp. 2d 140, 155 (D.D.C. 2010) ("Agencies must read and interpret a FOIA request as it was drafted . . . .").  "At best, [Ms. Eban] has established the [Army] may have missed some records in [its] searches.  But a 'reasonable and thorough search' may still miss records."  *Kowal*, 107

---

[2] One of the documents falls outside the time period to which Ms. Eban narrowed her request. ECF No. 29-4, at 8 (1951 report by Colonel Tigertt).

F.4th at 1027 (quoting *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)); *Reps. Comm. for Freedom of Press*, 877 F.3d at 408 ("That a few responsive documents may have slipped through the cracks does not, without more, call into question the search's overall adequacy.").

The existence of the library records therefore does not undercut Defendants' assertion that all records at WRAIR were digitized and searched, as Defendants were not obligated to produce any of the documents located by Mr. Conway.  Because Ms. Eban fails to otherwise demonstrate that responsive records remain in the Army's possession only in physical form, the Army was not required to conduct a manual search for physical records at WRAIR and USAMRIID.

### 2.    Army Medical Command and Walter Reed Medical Center

Ms. Eban argues that the Army Medical Command and Walter Reed Medical Center searches were inadequate because neither location conducted a manual search for physical records. ECF No. 29-1, at 4; ECF No. 34, at 6-7.  She claims that Mr. "Conway's declaration at least creates a dispute of fact . . . as to whether [record] transfers [to NARA or other installations] occurred for Operation Whitecoat-related records."  ECF No. 34, at 6.

Ms. Eban's argument cannot be squared with Mr. Conway's declaration.   In his declaration, Mr. Conway references neither the Army Medical Command nor Walter Reed Medical Center.  *See generally* ECF No. 29-4, at 1.  Defendants, on the other hand, present two affidavits explaining the adequacy of their search for records at both locations.  First, Defendants submit the affidavit of Timothy E. Koenig, Chief FOIA Officer for the Army Medical Command, with accompanying statements by IT Specialists at the Army Medical Command that explain that the Army Medical Command searched its seventy-seven organizational folders for records using the terms "Whitecoat," "Operation Whitecoat,"  "William D. Tigert," "Philip R. Pittman," "The

20

Seventh Day Adventist Church," "Dr. Frank Damazo," "Theodore R. Flaiz," "Elder G. W. Chambers," and "Tigertt," but found no responsive records. ECF No. 25-8, at 3-5; *see id.* at 1 ¶ 5.

Second, Defendants submit the affidavit of Patricia M. Spicer, General Counsel Direct Care Legal Support Attorney for Walter Reed Medical Center. ECF No. 25-5. Ms. Spicer explains that Ms. Eban seeks records from the former Walter Reed Army Medical Center, which is not what is now known as the Walter Reed National Military Medical Center. *Id.* ¶ 3. Rather, the records from the former Walter Reed Army Medical Center were transferred to NARA or moved to other installations as various parts of the Army realigned. *Id.* Ms. Spicer contacted Walter Reed Medical Center's Director for Education, Training, and Research and Chief of the Medical Records Division to obtain records responsive to Ms. Eban's FOIA request, but to no avail. *Id.* ¶¶ 4-7. She also contacted a senior historian in the Army who had served as the historian for Walter Reed Army Medical Center before it closed. *Id.* ¶ 8-13. The senior historian conducted a search for records using the term "Tigertt" and the abbreviated name "Tig" to account for misspellings, but the searches yielded no responsive records. *Id.* ¶ 12.

Since Ms. Eban presents no countervailing evidence that these locations contained responsive physical records, the court holds that the Army Medical Command and Walter Reed Medical Center conducted an adequate search.

## V.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 25, is **GRANTED** in part and **DENIED** in part. It is further **ORDERED** that Ms. Eban's Cross-Motion for Summary Judgment, ECF No. 29, is **DENIED** in part and **HELD**

**IN ABEYANCE** in part.  And it is further **ORDERED** that the case is **STAYED** and the parties shall file a joint status report proposing next steps in the litigation on or before October 20, 2025.

      **SO ORDERED.**

                                _____
                                LOREN L. ALIKHAN
                                United States District Judge

Date:   September 29, 2025